IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Case No. 2:14-CR-126 |
| | : |
| v. | : JUDGE ALGENON L. MARBLEY |
| | : |
| SHANE K. FLOYD, *et al.* | : |
| Defendants. | : |

## OPINION & ORDER

This matter comes before the Court on Defendant Shane Floyd's motion for new trial under Federal Rule of Criminal Procedure 33. (Doc. 152). As articulated after hearing oral argument on Floyd's motion on Friday, September 18, 2015, the Court **DENIES** Floyd's motion for new trial because it is untimely (in part); based on evidence gathered in violation of this Court's local rules; and, notwithstanding these errors, unmeritorious.

### I. BACKGROUND

Floyd argues that the Court must order a new trial due to (1) alleged misconduct on the part of certain jurors and courtroom personnel; (2) the jury's consideration of demonstrative evidence during the course of its deliberations; and (3) a coercive second "*Allen* charge" to the jury to continue its deliberations.

### II. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justices so requires." Fed. R. Crim. P. 33(a). The Rule, however, imposes certain time restrictions on defendants filing a motion for new trial.

1

While a motion for new trial "grounded on newly discovered evidence" may be filed within three years after the jury's verdict, "[a]ny motion for a new trial grounded on any reason *other* than newly discovered evidence must be filed within 14 days" of the jury's verdict. Fed. R. Crim. P. 33(b) (emphasis added). Courts historically treat a motion for new trial based on juror irregularities as a motion for new trial based on newly discovered evidence. *See United States Calderon*, 127 F.3d 1314, 1351 (11th Cir. 1997). That alone, however, "does not mean that [defendants] automatically have [three] years within which to file such a motion." *Id.* To the contrary, "[i]t is more than obvious that, by its very terms, a motion for a new trial based upon newly discovered evidence must not be based on evidence or incidents of which [defendants] had knowledge prior to return of the jury verdict." *Id.* Moreover, defendants bear the burden "of establishing in their motions that the evidence was in fact newly discovered." *Id.*

To prevail on a motion for new trial grounded on newly discovered evidence, a defendant must show the following: "(1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal." *United States v. Glover*, 21 F.3d 133, 138 (6th Cir. 1994). In most new trial motions based on newly discovered evidence, the proffered evidence goes directly to proof of guilt or innocence. *United States v. Williams*, 613 F.2d 573, 575 (5th Cir. 1980). Where, however, the defendant's evidence goes to the fairness of the trial rather than to the question of guilt or innocence, "a corollary to the third requirement stated above would be that the newly discovered evidence would afford reasonable grounds to question . . . the integrity of the verdict." *Id.* Motions for new trial based on newly discovered evidence are strongly disfavored, "should be granted with caution," and rest within the sound discretion of the district court. *See Glover*, 21 F.3d at 138.

2

## III. ANALYSIS

With these standards in mind, the Court finds that Floyd's motion is untimely under Federal Rule of Criminal Procedure 33(b) to the extent it argues that the jury's consideration of demonstrative evidence during the course of its deliberations constituted reversible error. Moreover, the Court finds that the remainder of Floyd's motion, even if it were timely, improperly relies on evidence gathered in violation of the Rules of the Southern District of Ohio regarding contact with jurors and fails on the merits under longstanding principles governing inquiries into the validity of jury verdicts and alleged juror misconduct. Accordingly, the Court denies Floyd's motion in its entirety.

### A. Floyd's Motion is Untimely in Part.

At the outset, the Court notes that Floyd's motion challenging the jury's consideration of demonstrative evidence is untimely because Floyd did not file a motion for new trial on this basis within 14 days of the jury's verdict, as required under Rule 33(b)(2). Floyd and his defense counsel had full knowledge of the jury's consideration of certain demonstrative items during the course of its deliberations *during the course of the trial.* In fact, the Court's allowance of demonstrative charts in the deliberating room was not only made in open court, but also objected to by defense counsel, argued, and resolved. (*See* Trial Tr., Pages 22-27). Floyd's counsel acknowledged as much during oral argument regarding his motion for new trial. Because this portion of Floyd's motion is based on evidence or incidents of which he had knowledge prior to return of the jury verdict, Rule 33(b) required Floyd to file a motion for new trial on this basis with 14 days of that verdict. *Calderon*, 127 F.3d at 1351. Floyd failed to do so. Accordingly, this argument is untimely.

### B. Floyd's Remaining Arguments Lack Merit.

Floyd's remaining arguments, while potentially timely, nevertheless lack merit. As a threshold matter, Floyd fails to describe why any of his arguments are grounded on newly discovered evidence that he could not have discovered earlier without due diligence. Fairly parsed, his motion merely implies that he did not learn of jury irregularities until he hired a private investigator to interview several of the jurors about the deliberative process. Those interviews occurred on or around July 10, 2015—over one month after the jury reached its verdict. During oral argument on Floyd's motion for new trial, however, his counsel conceded that he first learned of the need to investigate these purported irregularities *when the jury rendered its verdict*. Counsel stated that his observation of the jurors' body language, coupled with his "instincts" from many decades of practicing law in federal court, led him to this conclusion. Query why counsel waited over a month from that verdict to investigate further, or whether such a delay renders Floyd's remaining arguments untimely.

Putting aside the late hour of Floyd's motion, the Court is equally disturbed by counsel's knowing disregard for this Court's local rules and his direct violation of the Court's trial order regarding contact with jurors. As Floyd's motion recognizes, following the verdict, this Court admonished the parties and all counsel not to contact the jurors. This order followed the Southern District's local rules, which provide that "[n]o attorney, party or anyone acting as agent or in concert with them connected with the trial of an action shall personally, or acting through an investigator or other person, contact, interview, examine, or question any juror regarding the verdict or deliberations of the jury in the action except with leave of the Court." Southern District of Ohio Local Civil Rule 47.1; *see* Southern District of Ohio Local Criminal Rule 1.2 (making Local Civil Rules applicable to criminal actions unless an exception applies).

Regardless of this instruction and the governing Local Rules, which the Court finds are clear on their face, following the guilty verdicts, Floyd's counsel "found the [C]ourt's order to be questionable" because counsel believed "that the [C]ourt had an ulterior motive" in prohibiting contact with the jurors. (Doc. 152 ("As such, a member of the [d]efendant's legal team interviewed the two black jurors on a subsequent date.")). Counsel also stated during oral argument that the lack of a durational time limit in Local Rule 47.1 led him to believe that, if he just waited an unspecified amount of time after trial, the Rule might no longer apply, and he could contact jurors with impunity without seeking leave from the Court. These arguments are groundless, and form the basis for an order of contempt. *Nabkey v. Hoffius*, 827 F. Supp. 450, 454 (W.D. Mich. 1993) (finding an attorney in contempt of court when the attorney willfully violated court orders to refrain from contacting jurors).

Moreover, the Court could exclude evidence obtained in violation of this Court's orders. *See, e.g., United States v. Ridings*, 569 F. App'x 73, 75 (3d Cir. 2014) ("As an initial matter, we will accord no weight to the report from [defendant's] private investigator. The District Court's Local Rules prohibit post-trial contact with jurors without Court authorization, and [defendant] did not seek permission from the Court. This rule advances the important purpose of protecting jurors from harassment, and we will thus strictly enforce the rule here." (citation omitted)); *Cuevas v. United States*, 317 F.3d 751, 753 (7th Cir. 2003) ("We have previously noted with approval a district court's decision to exclude evidence from post-trial juror interviews obtained without leave from the court. We do so again in this case . . . ." (citation omitted)); *United States v. Venske*, 296 F.3d 1284, 1291 (11th Cir. 2002) (same—evidence obtained in violation of local rule governing juror contact was properly excluded). But even overlooking counsel's violation of the rules governing contact with jurors, Floyd's arguments in favor of a new trial still fail.

### *1. The Court Will Not Order a New Trial Based on Alleged Juror Misconduct.*

The thrust of Floyd's motion for new trial is that two jurors allegedly felt bullied and racially harassed into rendering a guilty verdict. Floyd submitted transcripts of his private investigator's surreptitiously recorded interview with those two jurors in support. As a reminder, the jury in this case returned a unanimous verdict against Floyd after three days of deliberations, and when each juror was individually polled in open court, he or she responded that the verdict was indeed unanimous, uncoerced, and a fair reflection of his or her vote.

The Supreme Court has long held that a juror is incompetent to impeach the verdict. *See, e.g., Mattox v. United States*, 146 U.S. 140, 149 (1892). As the Supreme Court has explained, if this were not so, "[j]urors would be harassed and beset by the defendant party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict." *McDonald v. Pless*, 238 U.S. 264, 267 (1915); *see also Cuevas*, 317 F.3d at 753 (noting that local rules prohibiting juror contact serve several important purposes, including "protecting jurors from harassment and the jury system from post-verdict scrutiny"). Federal Rule of Evidence 606(b), entitled "Inquiry into validity of verdict or indictment," codifies this rule and provides only three narrow exceptions to it:

> (1) Whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict into the verdict form.

*United States v. Wettstain*, 618 F.3d 577, 591 (6th Cir. 2010). Courts may not receive a juror's affidavit or other evidence of any statement by the juror "on a matter about which the juror would be precluded from testifying." Fed. R. Evid. 606(b); *see also Wettstain*, 618 F.3d at 591; *United States v. Gonzales*, 227 F.3d 520, 525-26 (6th Cir. 2000).

6

Under these principles, courts routinely decline to follow defendants down the rabbit hole of post-conviction juror recantations. For example, in *Wettstain*, the Sixth Circuit affirmed the district court's denial of a motion for new trial where a juror wrote to the judge stating that he regretted voting for a guilty verdict because the other jurors "wanted to hurry it up and get it over with." 618 F.3d at 590-91. Similarly, in *Medina v. United States*, 254 F.2d 228 (9th Cir. 1958), the Ninth Circuit affirmed the district court's denial of a motion for new trial where a juror submitted an affidavit stating that she only voted guilty because of the court's *Allen* instruction but did not believe that the defendant was guilty. *Id.* at 231. As the Ninth Circuit noted, "[i]t is well settled that matters affecting the personal feelings or views of a juror . . . should not be received to set aside or overthrow the verdict." *Id.* The Eleventh Circuit has gone even further and *reversed* the grant of a new trial based upon a juror affidavit concerning "the effect of [matters] upon that juror's mind or emotions [that] influenc[ed] the juror to assent to the verdict." *United States v. Sjeklocha*, 843 F.2d 485, 488 (11th Cir. 1988) (ellipses omitted). There, the Eleventh Circuit held that because the juror would be prohibited under Rule 606(b) from testifying regarding his desire to change his vote, the district court "erred in considering the juror's affidavit" and basing the grant of a new trial upon it. *Id.*

Likewise, and perhaps more fitting for the present case, in *United States v. Grieco*, 261 F.2d 414, 414-16 (2d Cir. 1958), the Second Circuit affirmed the district court's denial of a motion for new trial under analogous circumstances. There,

> one of the jurors, a woman, wrote a letter to [the judge] in which she declared that she had wished to vote for acquittal, but being the only juror who did, another juror, a man, was "very abusive," so much so that she was "shaking and crying" when she finally agreed to concur with the rest, and that she now wished "to retract."

7

*Id.* at 414. The second Circuit noted that "the blustering arrogance of [a] fellow juror" was not enough to warrant a new trial because courts "have to deal with human beings, whose opinions are inevitably to some extent subject to emotional controls that are beyond any accessible scrutiny." *Id.* at 415-16.

So too, here. The evidence—improperly obtained—and even construed most favorably to Floyd, amounts to no more than "weakly authenticated juror statement[s] containing vague allegations of 'harassment' and 'verbal abuse.'" *Mercado v. Portuondo*, No. 99 Civ. 11234 MBMAJP, 2000 WL 1663437, at *10 (S.D.N.Y. 2000) (collecting cases). The Court will not inquire further into this alleged juror misconduct or order a new trial on that basis. *Id.* It goes without saying that "[a]fter a jury has given its verdict, *has been polled in open court and has been discharged*, an individual juror's change of mind or claim that he was mistaken or unwilling in his assent to the verdict comes too late." *United States v. Williams*, 990 F.2d 507, 513 (9th Cir. 1993) (quotation omitted). After all, the purpose of a jury poll

> is to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict . . . and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented.

*United States v. Carter*, 772 F.2d 66, 68 (4th Cir. 1985) (quotation omitted).

### 2. *The Court Will Not Order a New Trial Based on Alleged Ex Parte Conversations with Staff.*

Likewise, the Court will not order a new trial based on any alleged ex parte communications between courtroom personnel and the jury. For starters, the Court maintains serious reservations over the veracity of Floyd's allegations regarding the conduct of courtroom personnel. Putting aside those concerns, even if Floyd's allegations were true in their entirety, he is not entitled to a new trial.

8

As the Sixth Circuit has explained, "juries in criminal cases must be free from outside influences." *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997) (quoting *Remmer v. United States*, 347 U.S. 227 (1954)). Thus, "a trial court confronted with an allegation of external tampering or contact with a juror during trial about a matter pending before the jury should determine the circumstances, the impact [of the contact] upon the juror, and whether or not it was prejudicial." *Id.* (quotation omitted). Generally, the court should make this inquiry "in a hearing with all interested parties permitted to participate"—a.k.a., a *Remmer* hearing. *Id.*

Critically, however, "not all communications with jurors warrant a hearing for a determination of potential bias." *Id.* Instead, "an allegation of an unauthorized communication with a juror requires a *Remmer* hearing only when the alleged contact presents a likelihood of affecting the verdict." *Id.* As such, the Sixth Circuit requires trial courts to conduct *Remmer* hearings "only in cases involving claims of intentional improper contacts or contacts that had an obvious potential for improperly influencing the jury." *Id.* Moreover, "the defendant must show that an unauthorized contact created actual bias." *Id.* Courts will not presume that a contact was prejudicial. *Id.* "By and large the cases following *Remmer* that have particularized a trial court's duty when faced with allegations of extraneous influences on a jury have dealt with intentional improper contacts or contacts that had an obvious potential for improperly influencing the jury." *United States v. Rigsby*, 45 F.3d 120, 124 (6th Cir. 1995) (collecting cases). Based on these cases, the Sixth Circuit does not require district courts to conduct evidentiary hearings before denying a motion for new trial that raises newly discovered evidence of potential juror misconduct or bias. *See United States v. Fritts*, 557 F. App'x 476, 479-80 (6th Cir. 2014) (collecting cases). Instead, such matters are left to the sound discretion of the trial court, because the trial judge is in the "best position" to address them. *Id.*

9

The Court recognizes that contact with a courtroom bailiff can, under some circumstances, amount to prejudice due to "the official character of the bailiff" as an officer of the court. *Parker v. Gladden*, 385 U.S. 363, 365 (1966). For example, in *Parker v. Gladden*, the Supreme Court reversed a defendant's conviction where a bailiff who was shepherding a deadlocked and sequestered jury remarked to one of the jurors in the presence of others: "Oh that wicked fellow [defendant], he is guilty," and on another occasion said to another juror, "If there is anything wrong [in finding defendant guilty] the Supreme Court will correct it." *Id.* at 363-66.

By contrast, even under Floyd's version of the facts, there is no evidence that the courtroom bailiff "harbored personal convictions against the defendant[]." *See DeLisle v. Rivers*, 161 F.3d 370, 387 (6th Cir. 1998). Nor, for that matter, is there any evidence that any contacts between the bailiff and the jury "present[ed] a likelihood of affecting the verdict." *See Frost*, 125 F.3d at 377. At most, and if true, the bailiff's interactions amounted to a good-natured effort to diffuse a flare-up during deliberations. The fact that one of the jurors may have informed the bailiff of tensions among the jurors, or that the bailiff may have asked the offended jurors whether they received an apology from the foreperson, does not rise to prejudicial error requiring a new trial. This case simply does not involve "intentional improper contacts or contacts that had an obvious potential for improperly influencing the jury." *Rigsby*, 45 F.3d at 124. The communications complained of, if true, were "innocuous." *See Tate v. Morris*, 909 F.2d 1485, 1990 WL 117367, at *3-4 (6th Cir. 1990) (unpublished) (finding harmless error from ex parte communications between judge and jury where judge "did not address any fact in controversy nor any law applicable to the case"); *United States v. Brika*, 416 F.3d 514, 526 (6th Cir. 2005) (holding that impromptu ex parte remark "while perhaps ill-advised," was not error), *abrogation on other grounds recognized by United States v. Hughley*, 192 F. App'x 447, 454 (6th Cir. 2006).

10

The Court has reviewed Floyd's motion and supporting exhibits, including juror interviews with Floyd's private investigator. The Court has heard oral argument from Floyd's counsel and the Government regarding the potential impact of any ex parte communications between the bailiff and the jury. The Court finds these steps sufficient "to make certain that [the] jury has not been tainted." *See Rigsby*, 45 F.3d at 124. Accordingly, the Court denies Floyd's motion for a new trial on the ground of alleged improper ex parte contacts with the jury.

### 3. The Court Will Not Order a New Trial Due to the Second Allen Charge.

Finally, the Court declines to order a new trial on the basis of the second *Allen* charge, which instructed the jury to continue their deliberations in an open-minded fashion. The provision of an *Allen* charge lies in the discretion of the trial court, and courts look to the totality of the circumstances to determine whether an *Allen* charge was unduly coercive, even in the face of alleged juror misconduct. *United States v. Reed*, 167 F.3d 984, 989-90 (6th Cir. 1999). In this case, the Court was not aware of a numerical split among the jury. But even if the Court *had learned* of the alleged numerical split—or even the precise identity of the purported holdout jurors—providing an even-handed *Allen* charge, such as the one issued here, remains "within the district court's discretion." *Bhat v. Univ. of Cincinnati*, 23 F. App'x 280, 291 (6th Cir. 2001) (upholding *Allen* charge where "judge learned inadvertently of the numerical split during polling" and the exact identify of "the lone hold-out"); *see also Reed*, 167 F.3d at 989-90 (affirming *Allen* charge provided on the twelfth day of deliberations in face of deadlocked jury and noting that such charges are proper even in cases "in which [the numerical split in the jury] has been voluntarily provided [to the judge]"). After reviewing the record, reading the parties' briefing, and listening to counsel's arguments, the Court finds that the second *Allen* charge was not unduly coercive or prejudicial to Floyd.

For the reasons just provided, the Court finds that Floyd's "newly discovered evidence" does not "afford reasonable grounds to question . . . the integrity of the verdict," *Williams*, 613 F.2d at 575, nor is it "likely produce an acquittal," *Glover*, 21 F.3d at 138. As such, Floyd has not shown that "the interest of justice" requires a new trial. Fed. R. Crim. P. 33(a).

Floyd's motion for new trial (Doc. 152), is therefore **DENIED**.

**IT IS SO ORDERED.**

                                                  *s/ Algenon L. Marbley*
                                                  **ALGENON L. MARBLEY**
                                                  **UNITED STATES DISTRICT JUDGE**

**DATED: September 25, 2015**